United States v. Simmons Good morning, Ms. Baumgartel. Good morning. You have reserved two minutes for rebuttal, so you may proceed. Uh-oh. I've broken the podium. May it please the Court, Sarah Baumgartel of the Federal Defenders on behalf of Stephen Simmons. Mr. Simmons' criminal trial was marred by a series of prejudicial errors, particularly two instructional errors that require a new trial. If the Court declines to grant a new trial, alternatively, it should order a resentencing because of a significant guidelines miscalculation. So this was a 922G case where Mr. Simmons was charged with possession of ammunition in connection with the shooting. The government's primary evidence at trial was the testimony of two witnesses, Jonas Bolden and Joe Holloway, both of whom testified pursuant to a grant of immunity. The district court gave, at the government's urging, a legally erroneous immunized witness charge that permitted the jury to subject immunized witness testimony to a lower standard of scrutiny than the law requires. Under the law, a district court is supposed to advise the jury to weigh cautiously and to carefully scrutinize the testimony of immunized witnesses. It is not sufficient to tell the jury that these witnesses can be treated as any other witness or as an ordinary witness, but that's precisely what the judge's instruction here did. This testimony was the linchpin of the government's case, and the credibility of these individuals was obviously significantly contested at trial. But the jury was handicapped in their ability to accurately gauge the credibility of these individuals. Counsel, I looked at the transcripts. I read the transcript of the jury charge conference, and there was also a curative instruction that was given early on, I believe by the court, not a curative instruction but a correction when the court thought counsel in opening statements was referring to these two witnesses as receiving cooperation as opposed to being immunized, being subpoenaed, and then immunized for their testimony. When I read the charge conference transcript, it did not appear at all at trial that the defense requested anything further than what the court offered, and quite the opposite, seemed satisfied with the court's addition of language that just because someone is immunized doesn't mean he has or has not testified truthfully. My question to you is, I couldn't see, and I believe that's been conceded, there was no request by the defense to add additional language, correct? That's correct. The government requested a charge specifically directed at immunized witnesses. But it seemed like the government then at the charge conference was asking to remove certain things or to water it down more, and the court seemed to add at the defense's request to not say just because someone is immunized they're telling the truth versus just because someone is immunized doesn't mean they are or are not telling the truth, has or has not. And my concern is when counsel says, you know, that works for the defense, that almost puts the trial court sort of at ease. Like not only is there no objection to it, it's almost, if it is error, plain error, it's invited error because the court seems satisfied by it. Do you see what I mean? It's not, there was not only not a request by the defense, the defense went further and assured the court that it was satisfied. I understand the point your Honor is making. We've agreed and the government has agreed that this is reviewed for plain error. To the extent that this was, quote, invited error, it was invited by the government submitting a legally incorrect immunized witness charge, which they represented was, quote, adapted from SAND, a well-respected treatise in this district and circuit for model charges, when in fact the government's proposed charge omitted critical portions of the SAND instruction that are required under the law. I get your point. It omitted, you should assess this testimony carefully. It did omit significant portions. I understand that. And I do have some questions for the government on why those sections would have been omitted. But my question to you, since you're the one up, is, you know, I get that the government didn't give the standard instruction to the court and omitted almost the entire, well, the entire paragraph, and the court then added the distorted language sentence, the one sentence. But now my question is to you, because I guess you're the one proverbial in the hot seat. I understand, your Honor. As I said, we acknowledge it's plain error. The defense counsel should have objected to the instruction when the court proposed it, and that objection was not preserved. The government hasn't argued that it was actual waiver of this issue, and we submit that it would not be, because it was not the known relinquishment, the intentional relinquishment of a known right. And so the government has not argued that it would rise to the level of an actual waiver, and it would not. So it is plain error. We have to show a clear and obvious error that affected Mr. Simmons's substantial rights. And that's why we try to go through in the brief. I mean, I think from this circuit's law, it's clear that it was an error. The heart of an immunized witness charge is supposed to be telling the jury to carefully scrutinize the testimony of these witnesses. And so that was the portion that was omitted. And then the question goes to whether it had an effect on the defendant's substantial rights and undermine the fairness of his trial. And here it did, because of two contextual issues. One is the importance of these witnesses' testimony in light of all the evidence. And the other is because in the context of the arguments that were made by counsel and the judge's other instructions, the credibility and the effect of the immunity agreements were not fairly put to the jury. And so in other cases where this court has found perhaps erroneous instructions, the next question is, was this issue fairly put to the jury through counsel's arguments and through other instructions? What about the extensive cross-examination? These witnesses were cross-examined extensively about the fact that they were getting immunity for their drug – their activities associated with drug dealing in exchange for – not in exchange for testifying. They were subpoenaed, and that was the point. That was the problem in opening statements. But what about the fact that they were cross-examined? And both counsel, both sides argued extensively to the jury what it meant about the fact that they received immunity. So that's right, but the problem is that the jury was never accurately told because the government was arguing that these witnesses did not receive any benefit from their immunity agreements or grants and that they could still be prosecuted for the crimes that they admitted on the stand. I submit that that was not accurate in this case, but the government solicited from a witness that his understanding was that he could still be prosecuted. The government argued in closing that there was not any benefit to these witnesses and that Bronx Narcotics could develop evidence and prosecute them tomorrow. And that's not really accurate. And because this is not a case where the jury was adequately informed of the benefits – it's ironic the government talks about how the defense counsel argued that immunity was, quote, a free pass. Maybe that language was unduly colloquial, but the government objected to those arguments and those objections were sustained. On the other hand, when the defense counsel objected to the government's argument that there was no benefit and I think characterized the defense argument that immunity might be a motivating force as, quote, bananas, the defense objected to that and those objections were overruled. And so you have a message from the trial judge and from the government that in fact these immunity agreements or grants are not significant. Just very briefly, because I'm now over time, the other important instructional error, and again, it is a plain error standard, but that's where we are, is the failure to give a limiting instruction with respect to the prior felony. This is extremely powerful evidence that is often – it can be unduly prejudicial if a jury is not properly informed that they cannot consider it as pending. Is there a difference between – because that came in by stipulation, right? Presumably for the benefit of the defendant so that the jury doesn't hear what the underlying felony. But you concede it's an element of the offense. Yes. Having a prior felony. So the jury hears only that there's a stipulation of the parties that there's a prior felony. Is there a distinction between the court saying this is being admitted as a stipulation as to an element of the offense versus the judge saying this is being admitted for any purpose? Well, the judge didn't actually say either of those things, so this court's precedent is clear. Well, the judge did say it's being admitted to satisfy element one, the element of the prior conviction, and it's being admitted for that, and that's not an issue in this case, right? Well – I mean, I'm paraphrasing. I understand, but the second part is what the judge said, which is why it's important. Because when the judge was going through the elements in her final instructions of a 922G1, the judge mentioned the prior felony element and told the jury that that was satisfied by the stipulation. And so that, frankly, is its own error. I don't think the judge should be partial directing a verdict like that. But what it didn't do is it did not caution the jury or tell the jury that they could not consider the stipulation with respect to the other elements of the offense. It didn't limit. It said what it could be used for but not what it can't be used for. Exactly. And I understand that we cite United States v. Robinson. It's a Seventh Circuit case, so it's not precedential, but it is persuasive, and it talks about the pernicious effect of not giving this sort of limiting instruction. But this is plain error review, so you've got to show that there's a reasonable probability that a limiting instruction would have led to a different result, right? It's a reasonable probability that it affected the outcome, yes. So what's the basis for thinking that a limiting instruction with respect to a prior felony that the jury heard no details about would have altered the result of this case? Because this court has recognized that whenever a jury hears about a defendant's prior conviction, that's powerful propensity evidence that undermines the presumption of innocence. It's the sort of evidence that may make a jury more likely to believe negative testimony or other incriminating evidence, as the Seventh Circuit talks about in United States v. Robinson. And so there, that was also, that was, what the government contended was a very strong case because it was just the search of an apartment where they found a firearm, and multiple police officers testified that the defendant had admitted it was his firearm. The defense challenged that testimony, and the point that the Seventh Circuit made is that we're not sitting as a second jury here. The problem with this sort of evidence is that it may make the jury more inclined to believe other inculpatory or other negative evidence. You have to show more than it may. You have to show that it reasonably would have. And I mean, it's just sort of hard when your own, when the defense counsel didn't even ask for this, when it's a stipulation that is designed to limit the jury's knowledge of what the details of the underlying conviction are, and it's an element of the offense, it's hard to see that there's a reasonable likelihood that the result would have been different. Your Honor, we did request the instruction. We requested a limiting instruction pretrial. So under this court's precedence, a request pretrial is not sufficient to fully preserve the objection, and so we should have objected when the stipulation was given. It's plain error review, right? That's right, but I'm saying we did request it. And, you know, the reason there is a stipulation is because the Supreme Court says in Old Chief that when this evidence is so prejudicial to the defendant that when it has to come in as an element, the government has to accept a stipulation. But I want to ask a clarification. The request for a limiting instruction, did it come before the parties agreed to the stipulation? When typically the government would be allowed to use the record of conviction, which would list the conviction, what the underlying felony is. So we made it pretrial when we entered the stipulation. So the request came when the stipulation was entered. Okay. But also just to be clear, I mean, under Old Chief, the government is required to accept a stipulation in 922. No, no, no, I get that. I'm aware of Old Chief and that the government is required to accept the stipulation and can't say no. The jury gets to hear what the underlying conviction is. But is there a difference in your view in terms of the risk of prejudice, in terms of propensity evidence, when it's a trial involving a single count for possession, whether it's a weapon or ammunition, a felon in possession, because it's an element of the offense. That's what the crime is. You have a prior felony and now you're in possession of a gun or ammunition. Is there a distinction between cases where there's more than one multiple count? The reason I ask that is as a prior trial judge, I would bifurcate the trial. In other words, the jury would only hear about the initial counts, and then if and when they reached a verdict on the first count, they would hear evidence on the possession count. But is there a distinction when you have a situation where the trial has ended and it's a single count in terms of propensity? The distinction is that this Court's law does not permit defense attorneys to bifurcate when it's a single count. Well, there's nothing to bifurcate. We try, Your Honor. I think, Gillian, there are many cases for the circuit where defense attorneys try to bifurcate the element or to stipulate the element away from the jury's consideration, and this Court has said that that's not permissible, and I understand that. But the reason that the defense counsel tries to do that is because they recognize how prejudicial the evidence is, and as Your Honor was discussing from your trial experience, that's the reason why trial judges will often bifurcate. But it can cut both ways, counsel. There are times when defendant wants the jury to hear what that prior felony was, and there are times when defendants don't want the jury to hear what that prior felony was and wish to have a stipulation depending on what that prior felony was. So I wonder whether there's a distinction in terms of when you get to whether someone was prejudiced, whether they have more than one count, you know, charge. So the Supreme Court talks about prejudice as suggesting decision on an improper basis, right? And so it's whether we're considering this prior conviction for something that we're not permitted to consider it for. And in the 922G context, the jury is allowed to hear about it because it is an element, but the reason that the limiting instruction is so important is because the only proper relevance is as to establishing the prior element. And if the jury considers it beyond that, then that's unduly prejudicial. And so that's why this Court's cases have repeatedly emphasized the importance of limiting instruction. Can I ask on plain error, setting the prejudice effect on substantial rights, just on the clear and obviousness of the error, you're setting a single out-of-circuit precedent. What does that tell us about the plainness of the error? Well, there are many cases, and I cite them in my brief, where this Court has held that a proper limiting instruction is important in a 922G case. Also, under Federal Rule of Evidence 105, if there is evidence that's admitted for a limited purpose, the Court must give a limiting instruction. We did actually request a proper limiting instruction pretrial. The government agreed to it. And so I think it's very clear, based on this Court's emphasis of the importance of limiting instruction and the requirements of the federal rules of evidence, and the government's acknowledgment that the felony was only relevant to establish the prior element, that it was an error not to give the limiting instruction. The prejudice is, you know, another argument that we make here is obviously cumulative prejudice. And so the Court does not consider the errors in isolation. They consider them together. We have an error that goes to the heart of evaluating the immunized witness testimony. We have an error that undermines the defendant's presumption of innocence through not having a limiting instruction. And then there are these additional evidentiary errors, which may not be so significant on their own, but they go to the evidence that the government used to corroborate the immunized witnesses. And so for that reason, as a cumulative matter, the errors were prejudicial. Thank you. Thank you, Ms. McLartell. We'll now hear from Ms. Heavey or Heather? Heavey. That's what I thought. All right. Ms. Heavey? May it please the Court. My name is Courtney Heavey, and I'm Assistant United States Attorney in the Southern District of New York. I represent the United States on this appeal, and I represented the United States on the underlying trial. The Court should affirm the defendant's conviction, and I will jump to the limiting instructions. And I'll first start with the instructions on immunized witnesses. Now, this Court's case law is clear that a proper instruction requires that the District Court draw the juror's attention to a witness's possible motivations or bias for or against a party. And that's precisely what the Court did here. The Court did not order the jurors to consider immunized witnesses the same exact way they do every other witness. The Court specifically drew the attention, the jurors' attention, to the fact that there were immunized witnesses, to the fact that there was an immunity agreement, to the fact that what the protections of that immunity agreement provided. But weren't there some things that could have been added? The instruction that was proposed by the government to the Court omitted some rather key language that's in the sentence. And I know the Court isn't required to follow the precise standard proposed instruction. It's probably wise to do so, isn't it? Particularly when the instruction, the standard instruction in SANS is you should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness's own interests. The only thing taken from that key phrase is you should determine whether it was colored or distorted by the witness. It seems like a pretty key thing missing from the instruction that the Court ultimately gave. Now, I get that the defense didn't ask, the defense didn't say, hey, judge, SANS actually says more than that. And went further to say, and I asked your opponent, hey, this works for the defense. But it seems to me, counsel, that that's pretty key language to tell a juror, hey, you need to scrutinize this testimony very carefully because of these incentives and particular interests with immunized witnesses that may or may not exist with or don't exist with a regular witness or a non-immunized witness. Yes, Your Honor, so two points on that. First, when we're looking at the language about to place guilt upon the defendant in order to further the witness's own interest, for such a witness confronted with the realization that he can win his own freedom by helping to convict another, the government submits that that language would be improper under the circumstances of this immunized witness because there are different types of immunized witnesses. And the case law that the defendant focuses upon are accomplice and co-conspirator witnesses, which the government would submit that is much more akin to. No, I agree with the for such a witness, which is why I didn't quote that part. I quoted the first part, which is a little different, okay? So I'm focused on scrutinize it carefully and whether it's colored in a way to sort of promote your own interests even when it's an immunized witness where the conduct that's being immunized is not the specific conduct that's being charged. I get that. And not to push too far, but I think even to place guilt upon the defendant in order to further the witness's own interest is not applicable when you've got a witness who was a victim of a crime and whose the nature of the immunity is a completely separate, wasn't even the scope of the investigation. There isn't the same, that witness doesn't have the same incentive to point a finger any which way when the immunity only comes when the government comes knocking and says, here's your subpoena, you are required to get on that stand and talk about what happened to you. Oh, and because you have to talk about the fact that you were shot, you're also going to be talking about the fact that you did unrelated drug crimes is different. But I also want to point to the other part here, which is it's also well established by this court that we look at the instructions as a whole. And I think you did have, if you look at, and in fact the instruction right before, immunized immunity instruction, is instructions on bias. And there, so right before they even heard the immunity, they would have heard you should consider evidence of any interest or motive that a witness may have in cooperating with or helping either party. It is your duty to consider whether they permitted that bias or interest to color their view. And you get in here that type of considerate, with caution, weigh it with care, subject to close and searching scrutiny. So the jurors were appropriately, they had all they needed. They were told what the immunity. On that point, it seems like there's sort of two substantive differences or questions at issue. One is sort of how much should the district court encourage extra scrutiny of, in particular, an immunized witness. And obviously the SAM instruction tells the jury special scrutiny for that kind of witness. And I think we don't have that here, but the point you're making right now is the jury's instructed, for all witnesses, consider their motivations and put careful scrutiny on that. I think the second question, where you started off before, is the, I think what you are articulating is sort of the legal task for immunized witnesses in particular, which is have they been put fairly on notice as to the possible motivations. You can use your language if you prefer. What was it, the possible motivations to tell the truth or in their testimony? I don't even recall. What was the language you used? Are you speaking about the actual instruction language? No. When you started before Judge Kahn's question, you sort of started, the question is really whether they're put on notice. Oh. The possible motivations for the jury to consider. The possible motivations for the jury to consider. That's from Vaughn. And that's Vaughn, which is a better cooperating witness, but your government accepts that as the relevant test here. So what, for me the question is what exactly in the instruction that the district court gave puts the jury fairly on notice of the immunized witness's possible motivations to the jury? What specifically would you look to and then apply that test that you've laid out to that language? It would be because each witness was immunized in order to testify. His testimony cannot be used against him in any criminal case except for. We'll start, you'll continue, but so far has the jury been put on notice? That is the benefit. So the jury's been put on notice of the possible benefit that the immunized witness gets from testifying truthfully. Yes? Yes. Okay, so then continue. And then on top of that, you consider the language, the instructions in the context of the arguments that have been presented as well. So the jury was notified. I thought Vaughn requires putting the jury on notice of the possible motivations of the witness. So you're saying the only possible motivation here is for the immunized witness to tell the truth. That's the only motivation that could exist and that the judge is required to point to. They were, it's the motivation, the protection that their statements would not be used against them is able to be, that is what the jury needs to know to be able to understand whether that protection provided a bias. It was ultimately a question for the jury to consider whether the witness was biased from the protection. It was not up to the court to say that this witness is in fact biased. Also, Vaughn instructs the court to look beyond just the language that is used in the instructions and to also consider the arguments that are made by the parties about what that motivation means. In addition, Vaughn involved a requested instruction. So certainly defense has an opportunity to, if they feel that language is insufficient about putting forth their position and their theory of the case, they have an opportunity to ask for further instructions. But that was not done here. So there is not a basis to find that there was a clear error for the judge's instructions on the type of immunized witnesses here. Certainly nothing in the case law suggests that these instructions, particularly under the circumstances of a witness who, like I said, is different than the accomplice and co-conspirator witnesses that the case law cited. This wouldn't be sufficient for a cooperator? I think that's correct. I think there is a practice. I apologize. I didn't realize that I'm over time. Go ahead. There certainly is a practice, including more language, about scrutinizing testimony of cooperators whose incentives are different, who are receiving clear benefits from the government and hoping for a reduced sentence. So there, in addition to scrutinizing language, presumably the government would agree that there would have to be some additional instruction to the jury as to those motivations. As to the testimony, right? Your Honor, I actually am not sure. I hadn't looked at what we use for our cooperators with respect to motivation. Well, it seems that this court has consistently said that where the motivations are obvious, the court doesn't have to restate them. I think your argument with the immunized witnesses is that it's not clear what motivations there are to falsely implicate Simmons in the first place. So just letting the jury know about the fact that there is a deal, that there is some benefit being conferred on the witness, is important for the jury to know. But it allows Ms. Baumgartel to articulate why would that induce someone to give false testimony about another. Correct, and it's certainly not up to the district court to start expounding on its own possible motivations that the defense hasn't even attempted to ask the court to put, to instruct the jury. And again, I notice my time is up. I don't know if your Honor wants, or if your Honors want me to go through why there is not prejudice here, because there is a long list of the types, the various types of evidence that supported this conviction, but I will otherwise rest on my horse. Could I have, oh, would the presiders? I think, I mean, if anybody wants to hear the answer to that, I think it's clear from the briefs, but it sounds like you wanted to get to a different issue. I wanted to ask about the limiting instruction on the stipulation. Yeah, go ahead. So, I mean, it does seem that this, the stipulation and then what the district judge said later, tells the jury what they can do with it and not what they can't do with it. You know, we certainly have lots of law about the potential prejudicial effect of prior convictions, all kinds of limitations on them and requirement for limiting instructions when they're given, or when it's permitted. So, I mean, I understand placing emphasis on whether it's plain error, but isn't it error? Your Honor, we would submit that it was not given the context of the, the case law indicates that there are many ways that one can address this potential prejudice, and here that was addressed in many ways, including the stipulation could not have been more bare bones about merely the fact that there was a conviction without any details of the conviction. No other witness, there was no other evidence about the conviction. That seems to be a different question. So, when you're allowing something in that can only be used for a limited purpose, there's a limiting instruction that tells the jury what they can do with it, and then there's presumably efforts to not tip the 403 prejudice over into the 402 relevance, and you do that by a stipulation or, you know, not, I think Judge Caproni said something like, you know, don't felon, felon, felon. Limiting the kinds of questions that are repetitiveness or gruesomeness or whatever it is, isn't that different than the initial question of whether when a conviction's coming in for a limited purpose, you have to tell the jury it's only for that limited purpose? Those seem to me separate questions. Can you rephrase that one more time? I'll try. Sorry. Different points between instructing the jury the limited purpose for which they may use something and for which it is relevant and limiting the extent to which it is given to the jury and how it's given to the jury so as to limit the prejudicial effect of the evidence that is coming in for a proper purpose. Those seem to me different things, and what I hear you saying in response to the question about didn't they need to be limited in what they could use it for is, well, the judge did this other thing, which is, and the parties did this other thing, which is allow stipulation and don't go crazy on felon, felon, felon, but that seems to me just a separate analysis from the requirement of a limiting instruction that tells the jury, here's what you can do with this evidence that's been admitted. I think I understand what you're saying. I may not understand. No, I think I understand. Say it again. They are different things, but I think they go to the same concern, and the concern is will the jury misuse this information, and so I think the way, these are all different ways to get at that same thing. Certainly there could be. Well, no, one is about, that's helpful, because I think the former category is about misuse of the information, and the latter category is about sort of overuse of the information or that the proper use of the information sort of affects too much, is coming in for too much to the point of prejudice. It's the misuse that a limiting instruction corrects. Your Honor, not to take us back to clear air where it sounded like you didn't want to be there, but I do think it is relevant that there is, under clear air, we're looking for clear and obvious, and I don't know that there are cases, certainly in this circuit, that have held that it is a clear and obvious error not to give that instruction. It is certainly discussed as the benefits of a limiting instruction. Of course, we frequently seek such limiting instructions. They are often given, but that is different, I think, under a clear air standard of whether it is a requirement. If I may, with the presider, just as a follow-up clarification here. The request for a limiting instruction pretrial, was it in conjunction with the entry of the stipulation, or was it when the defense contemplated that a certified record of conviction would be introduced in lieu of a stipulation that just says a felony and not what that felony was? Do you see what I mean? I think so, and my recollection is that the limiting instruction was put to the court in the request to charge. I don't recall, but I could be wrong. Well, I looked at the record, I believe, when the stipulation was entered, and I didn't see a request for one to be given or one given because I looked for that. Correct. I'm wondering if there was an agreement that it would have been given and then just forgotten to be given, and no one brought it to the court's attention, which I think is different than just a general instruction when a stipulation is not contemplated. I think I understand what you're asking. I don't have a recollection of there being a separate discussion about what limiting instruction, if any, to provide at the time of this entry of the stipulation. My recollection is that the limitation that both parties proposed were in the request to charge. Got it. And then I think that was the only question I had, and you said the government will on its own sometimes request the limiting instruction. Is it when there's more than one count and a stipulation comes in to prove an element of the offense of the convicted felon in possession versus it being used for a determination of guilt or non-guilt of a separate count that's joined with that count? Do you understand my question? I believe so, Your Honor. My understanding is that the government's practice is to put it in our request to charge. I don't know that there is a set practice with respect to whether and how to instruct the jury at the time of stipulation, and I will note that I think there is some element of a strategic question, but I think that is more of a defense opportunity. How much do you want to tell the jury felony, felony, felony, particularly in a case where the only time that we're talking about, the mention of felony is so very low that there is an element for the defendant to make a strategic call about, do you want a limiting instruction right when the stipulation is? Do you want it again when they request to charge? Do you not want it at all? And so I think that is something. So what is your point, that this is better left as an argument in a 2255 about ineffective assistance of counsel, and then counsel can explain why they didn't request the limiting instruction? Just that it's not clear error. Okay. Okay, thank you very much, Ms. Heavey. We'll now hear from Ms. Baumgartel for two minutes. Thank you. I just want to start by answering Judge Kahn's question. The limiting instruction was requested in the defendant's motions and limine. So it's docket entry 17, and we discussed it on page 17 on the docket, but we talk about it at 17 to 18 of our opening brief. Pre-trial in the motions and limine, the defense sought to limit the potential effect of the felony by offering to enter a stipulation, moving to preclude mention of felony, felony, felony, and asking for this limiting instruction to be read at the time the prior felony stipulation was entered. Can you address, in response to my question about the instructions relating to witnesses that were immunized, there was that colloquy with the court where the court said, well, I can add, as with interested witnesses. And then when you go to the previous page, the court says, look, there are interested witnesses here, or there may be witnesses that have a bias or an interest to color their his or her testimony. And then the court says you should weigh that carefully with care. How is that different than putting the language that says you should scrutinize it? So fundamentally, the problem with the court's instructions is that it's not, the court is supposed to advise the jury that, it's not as strong as a presumption, but to advise the jury that immunized witnesses have some special motivation. And so rather than, with the court's instructions. Some special motivation to what? To, well, to color their testimony in a way that they're, to color their testimony that may curry favor with the prosecution. So I am not saying there are any magic words at all that the court has to use, but what this court's cases have recognized is that. I guess, I mean, that's really, the question is, is that a motivation that has to be put to the jury under Vaughn? If that's, I think you agree that's the test. Yes. Is it obvious? I'm not sure it's obvious, because I think there's a certain intuition, right, that if you're, you know, you're at risk of prosecution if you testify falsely. So the idea that the testimony will be false or slanted or something, because of currying favor with the jury, with the prosecution, in order not to be prosecuted. I mean, let's actually flesh it out. That's what you're saying, right? Right. And you're not asking, I mean, is that what you're saying? Language is required to that effect? So there are a number of questions, Your Honor, asked that I wanted to address, so I'm going to do it in a somewhat circular way. But the government tries to say that immunized witnesses are different than cooperators, but this court's cases reject that. And you can look at United States v. Gleason, United States v. Dixon, United States v. Prahl, those all involved immunized witnesses. And what the court says is that these are categories of witnesses that are particularly vulnerable to the prosecution's power and influence. That's the unifying characteristic. And so what that means is that when an immunized witness like Bolden or Holloway gets on the stand, they have a motive to name Mr. Simmons as the shooter, even if it is not true, at the point that they have gotten an immunity agreement. And the reason for that is because they're immunity agreements for accomplice witnesses, and there are immunity agreements for victims, I suppose. But they're different, aren't they? You're saying that they're the same. They are the same because what happens is that – and these are arguments that the government could make as to why the jury in this case should find that the immunity grant is not significant, but it makes you particularly vulnerable to the prosecution's power and influence. And you saw that play out in this trial with the witness Erica Lopez, who we haven't spoken a lot about because her testimony ended up being awash. But what happened is pre-trial she had made conflicting statements to the prosecution, some that inculcated Mr. Simmons and some that did not. And when she got on the stand, she attempted to recant, essentially, and to say that, in fact, she would not implicate Mr. Simmons, and on the stand the government threatened her with perjury. Imagine if this had been a witness who had had an immunity agreement. They would have had a very powerful motive not to even to attempt to recant their naming of Mr. Simmons as the shooter. And so the point that the judge has to convey is that an immunity grant gives a witness special motivations and their testimony should be carefully scrutinized. Then the government can make the arguments that they want to make about why it's not significant in this case, or ultimately the witness is going to tell the truth, the same arguments that they make with cooperators in many situations. But the jury needs to have accurate information about the agreement in order to be able to accurately decide for itself whether it should credit this witness testimony, and they didn't have that here. Very briefly, it's the same reason why this court has held that the judge must give a theory of defense charge if requested. It's a similar idea. It's one thing for the defense counsel to try to argue that there is a special motivation that comes from the immunity grant, but it has no significance if it's continually undermined by the prosecution's arguments and rebutted by the judge's instructions. And here that's what happened. The jury was not able to fairly and accurately evaluate the effect that these immunity grants might have had on the key testimony of the two witnesses who led to Mr. Simmons' conviction. Unless the court has any further questions. Thank you very much, Ms. Van Gertel. Ms. Heavey, that will reserve decision. That concludes the argument.